McIlvaine, C. J.
The true relation between the city of Cleveland and the Kinsman street Railroad Company is the question of prime importance in this case. The power to-regulate and control the public streets of the city is lodged in the municipal authorities. The object in conferring this-power, and its exercise by the city council, are, and should be, to conserve the public welfare and convenience. One of the-modes of promoting this welfare and convenience is through the establishment of street railroads. The plaintiff corporation, organized under the general incorporation act of May 1,, 1852, by section 12 of the act was bound to recognize this-power of the municipal authorities oyer the streets of the city. Section 12, as amended April 15, 1857, provides : “ If it shall be necessary, in the location of any part of any railroad, to-occupy any road, street, alley or public way or ground of any kind, or any part thereof, it shall be competent for the municipal or other corporation or public officer or public authorities-owning or having in charge thereof, and the railroad company, to agree upon the manner and upon the terms and conditions upon which the same may be used or occupied; and if said, parties shall be unable to agree thereon, and it shall be necessary in the judgment of the directors of such railroad company to-use or occupy such road, street, alley or • other public way or ground, such company may appropriate so much of the same-as may be necessary for the purposes of such road, in the same-manner and upon the same terms as is provided for the appropriation of the property of individuals,” &c. Under the-authority of this section, the plaintiff and the city authorities-agreed upon the terms and conditions upon which the plaintiff’s road was constructed upon the streets ofthe city.
"While we think that it was not within the power of the municipal authorities, by such agreement, to confer upon the *251 plaintiff the right to use these streets for railroad purposes, to the exclusion of all other persons or corporations, if the public welfare of convenience should require a further similar use; we also think that no such exclusive right was intended to be conferred. If an exclusive privilege was intended, it should have been expressed, and we find in the ordinance and resolutions relied on, not only the absence of such expression, but, on the other hand, a different intention indicated. In the ordinance of September 20, 1859, it was declared that “ any company organized for the purpose of laying down rails and running street passenger cars to be drawn by horses or mules through, the streets of Cleveland, shall be guided, governed and regulated, by the conditions (therein expressed) and such restrictions as-the council may hereafter pass.” And in the resolution of' October 25, 1859, containing the grant of right to the plaintiff " specially, it is provided that the right is granted “ under the terms and conditions prescribed by said ordinance ” (of September 20, 1859), “ or which may hereafter be prescribed by the city council.” And a like stipulation is contained in the subsequent resolutions authorizing a change of route. ■ We-have no doubt, that under the power thus stipulated for (if such reservation had been at all necessary) the municipal authorities might at any time thereafter (if it was thought the-public convenience required it) grant the like privilege to another company to use and occupy the same streets, and indeed the same route, for railroad purposes, to be used in common •with tñe company or companies to whom the privilege was-first granted. ,
What we have already said in refutation of an exclusive-right in the plaintiff to use the route upon which its tracks-were laid for street railroad purposes, does not in the least conflict with its right of private property in the material of which •its road is constructed. Buell material, in place, is as strictly the private property of the corporation as it was before it was-placed, save in this only, that having been placed in a public-street, it was thereby dedicated to the ordinary use of the public; but, as a railroad, such material remains the private *252 property of the company, and for such purpose it is subject to the use and control of the owner exclusively. When, therefore, a right of way for street railroad purposes is granted over the same ro.ute to another company by the municipal authorities,, the private property of the former cannot be appropriated by the latter company until compensation is first made by the latter to the former company. And, in the absence of a stipulation to the contrary, it is quite clear to ■our minds, that the municipal authorities have no more power to fix the amount of compensation that should be paid by the latter to the former company for the right to the joint use of ■such material, than it has to determine the compensation to be paid to other owners of private property taken for the same public use. In such case, if no agreement be made between the companies as to the matter of compensation, or the same be not assessed by a jury as in other cases of the condemnation of private property to public uses, the latter company should be' enjoined from the forcible appropriation.
But in this case we find a stipulation to have been made ; namely, that the plaintiff would lay its tracks under the terms .and conditions prescribed by the ordinance of September 20, 1859, or which might thereafter be prescribed by the city ■council; and, also, that the East Cleveland Street Railroad Company (a corporation then in existence) should be allowed the use of the plaintiff’s track upon reasonable terms, to be prescribed by the' council, unless agreed upon by the parties. 'The right of the council to prescribe “ terms and conditions ” ' in the future, it seems to us, was sufficiently broad to cover a future exigency like the one then existing, and specially provided for ; namely, an exigency arising from the necessity to provide for the public welfare by running the cars of other street railroad companies over the track of the plaintiff. And this being so, the only question remaining is, was the condition as to the compensation to be paid by the Broadway & New-burgh Company to the plaintiff reasonable ? In other words, was the compensation, as fixed by the council, fair and adequate? Upon this question issue was joined, but no testimony *253 offered. The burden of showing its inadequacy rests upon the plaintiff. Under these circumstances, the injunction prayed for must be denied.

Petition dismissed.